# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9713 | **DATE** | 3/19/2003 |
| **CASE TITLE** | Golston, et al. vs. Genova, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The court denies in part and grants in part Calumet City's and the individual defendants' motion to dismiss [#19]. The court dismisses Count VI for lack of subject matter jurisdiction. The court dismisses plaintiffs' claims against Garrison, Genova, Qualkinbush and Wilhelm in their official capacities under Counts I, II and VII. The court dismisses plaintiffs' Title VII claims against Garrison, Genova, Qualkinbush and Wilhelm under Count VII. The court dismisses plaintiffs' Title VII claims against Genova and Wilhelm under Count IX. Defendants are directed to answer plaintiffs' first amended complaint by April 9, 2003. A scheduling conference is set for April 24, 2003 at 9:30 a.m. In the meantime, the parties are directed to make Rule 26(a)(1), Fed. R. Civ. P., disclosures.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 3 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 20 2003 date docketed | |
| | Docketing to mail notices. | | | 25 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/19/2003 date mailed notice | |
| MD | courtroom deputy's initials | 03 MAR 20 AM 8:00 Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRED GOLSTON and<br>GREGORY SCOTT,<br><br>    Plaintiffs,<br><br>v.<br><br>JEROME P. GENOVA, both in his individual capacity and in his capacity as Mayor of the City of Calumet City, Illinois, CITY OF CALUMET CITY, an Illinois Municipal Corporation, ROLAND QUALKINBUSH, both in his individual capacity and in his capacity as Supervisor of Public Works for the City of Calumet City, ROB GARRISON, both in his individual capacity and in his capacity as Supervisor of Public Works for the City of Calumet City, JOSEPH T. WILHELM, both in his individual capacity and in his capacity as Chief of Staff for the Mayor of the City of Calumet City,<br><br>    Defendants. | **DOCKETED**<br><br>MAR 2 0 2003<br><br>No. 01 C 9713<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Before this court is a nine-count first amended complaint of plaintiffs, Fred Golston ("Golston") and Gregory Scott ("Scott") against defendants, City of Calumet City ("Calumet City"), Rob Garrison ("Garrison"), Jerome P. Genova ("Genova"), Roland Qualkinbush ("Qualkinbush") and Joseph T. Wilhelm ("Wilhelm"). Plaintiffs claim under 42 U.S.C. § 1983 that defendants violated their First Amendment rights to freedom of speech and freedom of association (Counts I and II) and under 42 U.S.C. § 1985 that defendants conspired to violate



said rights (Counts III and IV). Plaintiffs also allege that defendants are liable for retaliatory discharge against them in violation of Illinois law (Count V); unfair labor practices in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157 and 158 (Count VI); race discrimination and harassment in violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (Count VII); and race discrimination in violation of 42 U.S.C. § 1981 (Count VIII). Moreover, plaintiffs allege Calumet City, Genova and Wilhelm retaliated against them for complaining about race discrimination in violation of Title VII (Count IX). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Calumet City, Garrison, Qualkinbush and Wilhelm file a motion to dismiss plaintiffs' first amended complaint. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a), 1367 and 42 U.S.C. § 2000e-5(f)(3).[1] For the reasons set forth below, the court denies the motion in part and grants it in part.

---

[1] The court lacks jurisdiction to adjudicate plaintiffs' unfair labor practice claims under Count VI. *Kaiser Steel Corp.* v. *Mullins*, 455 U.S. 72, 83 (1982) (The National Labor Relations Board "is vested with primary jurisdiction to determine what is or is not an unfair labor practice. As a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to §§ 7 or §§ 8 of the [NLRA],' and they 'must defer to the exclusive competence of'" the NLRB, quoting *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 245 (1959)); *McCarthy* v. *Sunset Food Mart, Inc.*, No. 94 C 6459, 1994 WL 692606, at *4 (N.D. Ill. Dec. 1, 1994) (recognizing that courts have jurisdiction over claims involving unfair labor practices only where the plaintiff also asserts a claim involving enforcement of a collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.*).

Furthermore, as an aside, the court recognizes that defendants are not "employers" under the NLRB. *See* 29 U.S.C. § 152(2) ("The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include . . . any State or political subdivision thereof"); *accord, D'Acquisto* v. *Washington*, 640 F. Supp. 594, 624 (N.D. Ill. 1986) (stating that federal preemption of state law in interpreting collective bargaining agreements "does not apply here since municipal governments, as arms of the state, are not employers under the Labor Management Relations Act and so are not covered by it[,]" citing 29 U.S.C. § 152). Accordingly, the court will dismiss Count VI for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).

2

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiffs can prove no facts in support of their claim that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiffs' favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiffs' first amended complaint includes more than 40 pages of allegations, many of which are conclusional and repetitive, and is difficult to follow at times. Nonetheless, the court distills the following facts, which are taken as true for purposes of this motion:

### A. The parties

Calumet City is a municipality incorporated under the laws of the State of Illinois. One of its departments is the Public Works Department. At all relevant times, Genova was the Mayor of Calumet City and served as chief and principal policy-maker of Calumet City. At all relevant times, Wilhelm was Genova's Chief of Staff and Personnel Director. At all relevant times, both Garrison and Qualkinbush were supervisors in Calumet City's Public Works Department. Furthermore, all defendants occupied final decision-making positions.

Garrison, Qualkinbush and Wilhelm, whom the court will collectively refer to as the "individual defendants" where appropriate, reported to Genova. Furthermore, the individual defendants were responsible for management, operations and policy-making within the Public Works Department. (First Am. Compl. at 9-10 ¶ 37.) The individual defendants also were plaintiffs' immediate supervisors. (*Id.*)

Plaintiffs are African American men. (*Id.* at 9 ¶ 36.) At all relevant times, they worked as the only part-time employees in the garbage collection division within the Public Works Department. (*Id.*) In their respective jobs, Golston worked from 1999 until his termination in July 2001 and Scott worked from 1999 until his termination in May 2001 or 2002. (*Compare id.* at 6 ¶ 17 *with* 17 ¶ 62.)

### B. Events leading to the instant law suit

While plaintiffs worked at the Public Works Department, defendants had a "pattern and practice of refusing to hire African American men to full time positions while mandating they work full time" hours. (*Id.* at 14 ¶ 53(e).) Defendants also subjected plaintiffs to a more rigid promotion criteria and different pay scale and provided plaintiffs with lesser benefits than white employees with the same background and experience. (*Id.* at 17 ¶ 60(b), 32 ¶ 78(b)(c).) Furthermore, defendants gave "certain white employees" preferential treatment because of work they did on city time for the Director of Public Works, James Stack, and for Genova. (*Id.* at 13 ¶ 53(b).) In addition, defendants awarded promotions and raises to "less qualified white employees" who agreed to work specifically for Genova on city time. (*Id.* at 13 ¶ 53(c).)

In 2000, Golston requested of an unspecified individual that he receive a promotion to a full-time position but his request was denied. (*Id.* at 6-7 ¶ 22.) Moreover, both plaintiffs

repeatedly asked Garrison and Qualkinbush if they could receive the necessary training for them to become full-time employees but their requests were denied. (*Id.* at 10 ¶ 38, 36 ¶ 85.) Plaintiffs also repeatedly complained to Garrison and Qualkinbush about the unfair treatment of black men within the Public Works Department. (*Id.* at 7 ¶ 23.)

Plaintiffs began to speak out about defendants' unfair treatment of employees at the Public Works Department. On February 10, 2000 Golston spoke at a City Council open forum to express his concerns and objections about defendants' treatment of employees. Moreover, plaintiffs organized a campaign for union representation of part-time employees, who were not covered by Calumet City's collective bargaining agreement. (*Id.* at 13 ¶ 53(d), 29 ¶ 69.)

At some unspecified point, Qualkinbush, at the direction of Genova and Wilhelm, instructed plaintiffs to discontinue their union activities or face termination. (*Id.* at 17 ¶ 60(c).) Because of "his refusal to stop his unionization campaign," Golston received a demotion in August 2000. (*Id.* at 14 ¶ 53(f).) Subsequently, Golston was injured while working on the job and was placed on "light duty" status. (*Id.* at 14 ¶ 53(h).)

In 2001, Genova ran for re-election as Mayor of Calumet City. (*Id.* at 14 ¶ 53(k).) Defendants used the Public Works Department to provide jobs to Genova's political supporters, who had no prior work experience. Around January 2001, plaintiffs began to actively campaign against Genova. In addition, Scott's wife ran for alderman against a candidate supported by Genova.

Plaintiffs began to notice that one of Genova's personal bodyguards began to follow and harass them so that they would not publicize political corruption within the Public Works Department. Further, because of plaintiffs' campaign work against Genova and the candidates

whom he supported, defendants met and decided to terminate Golston's light duty status on February 4, 2001. (*Id.* at 14 ¶ 53(j).)

On April 3, 2001, Genova was re-elected as Mayor. One week after his re-election, defendants began a "campaign of harassment and intimidation" against plaintiffs. (*Id.* at 13 ¶ 53.) On April 11, 2001, the individual defendants, at Genova's direction, disciplined Golston for "abuse of his lunch period." (*Id.* at 14-15 ¶ 53(l).) Golston was the only employee to receive sanctions for such conduct although other white male employees were not disciplined for their similar conduct. (*Id.*) On April 19, 2001, Golston received a one-day suspension from work. (*Id.* at 15 ¶ 53(m).) On July 3, 2001, defendants terminated Golston. (*Id.* at 15 ¶ 53(n).) Scott remained an employee until May 2001 or 2002 at which time defendants terminated him. (*Compare id.* at 6 ¶ 17 *with* 17 ¶ 62.) Defendants terminated both plaintiffs because they are African American (*id.* at 33 ¶ 78(e)) and because of their union activities and opposition to Genova (*id.* at 18 ¶¶ 63, 64, 23 ¶ 75).

## DISCUSSION

Defendants argue the following grounds for dismissal: (1) plaintiffs fail to allege Calumet City is subject to municipal liability under § 1983; (2) plaintiffs fail to state a claim against Calumet City under § 1985; (3) plaintiffs fail to allege that the individual defendants are liable under § 1983 (4) plaintiffs fail to allege race discrimination, harassment and retaliation; and (6) should the court dismiss plaintiffs' federal claims, then plaintiffs' state law claims must be dismissed for lack of supplemental jurisdiction.

## A. Liability of Calumet City under § 1983

42 U.S.C. 1983[2] "is not itself a font for substantive rights; instead, it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel* v. *Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997). In order to prevail on a § 1983 claim, a plaintiff must establish that the defendant deprived him of a constitutional or federal right and that the defendant acted under color of state law. *Brokaw* v. *Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000) (internal citations omitted). "Although a municipality [or other local governmental entity] is subject to suit under § 1983, *respondeat superior* liability will not suffice to impose § 1983 liability." *Baskin* v. *City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). Instead, a local governmental entity may be held liable under § 1983 in one of three ways:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Vela* v. *Vill. of Sauk Vill.*, 218 F.3d 661, 665 (7th Cir. 2000), quoting *Baxter* v. *Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994) (internal citations omitted). Plaintiffs argue that they allege sufficient facts to meet the second and third approaches. It is unnecessary to address the

---

[2]Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

7

merits of plaintiffs' argument as to the third approach because plaintiffs allege facts supporting Calumet City's liability under the second approach. Here, with respect to the Equal Protection Clause violations, plaintiffs allege that Calumet City employed a "pattern and practice" of refusing to hire African American men to full-time positions and gave preferential treatment to less qualified white employees. Furthermore, with respect to the First Amendment violations, plaintiffs allege that defendants used the Public Works Department as a source of political patronage and retaliated against plaintiffs because of their union activities and opposition to Genova. Moreover, with respect to both constitutional rights violations, plaintiffs allege that defendants terminated them on account of their race, union activities and opposition to Genova.

Defendants, however, argue that plaintiffs' allegations are conclusional because plaintiffs fail to allege dates, locations, times or persons engaged in these patterns or practices. (Def. Mem. at 5-6.) Furthermore, defendants argue that the court should not ignore that their actions were in response to plaintiffs' "poor work performance." (*Id.* at 5.)

Defendants' arguments are without merit. Defendants urge this court to require plaintiffs to allege their § 1983 claims with specificity, which plaintiffs need not do. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 169 (1993) (holding a plaintiff is not required to meet a heightened pleading standard for municipal liability under § 1983). In any event, plaintiffs allege specific facts such as that defendants' unlawful activities took place at the Public Works Department and that the individual defendants met on February 4, 2001 to terminate Golston's "light duty" status and terminated Golston in July 2001 and Scott in May 2001 or 2002. Moreover, where defendants ask this court to consider plaintiffs' "poor work performance," such facts are not within the pleadings and thus this court

disregards these facts. Instead, plaintiffs' facts are sufficient to provide Calumet City of notice of its municipal liability subject to § 1983.

**B.      Liability of Calumet City under § 1985**

Under 42 U.S.C. § 1985(3),[3] plaintiffs must show "(1) a conspiracy; (2) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States." *Indianapolis Minority Contractors Ass'n, Inc.* v. *Wiley*, 187 F.3d 743, 754 (7th Cir. 1999). Furthermore, plaintiffs "must allege a conspiracy motivated by a racial or other class-based animus." *Kyle* v. *Morton High Sch.*, 144 F.3d 448, 457 (7th Cir. 1998).

Defendants assert that plaintiffs plead only conclusional allegations under § 1985(3) against Calumet City. Plaintiffs, however, allege a conspiracy that the individual defendants met and conspired with Genova to terminate plaintiffs "because of their political opposition to the

---

[3]Section 1985 states, in relevant part:

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

9

mayor," their union activities and their race. (First Am. Compl. at 18 ¶¶ 63, 64, 23 ¶ 75, 33 ¶ 78(e)) These facts are sufficient to meet the liberal notice pleading requirements under Rule 8.

Nevertheless, the court recognizes that plaintiffs' conspiracy claims concern disfavorable treatment for engaging in First Amendment expression and activities, which generally are not sustainable under § 1985(3). *See Grimes v. Smith*, 776 F.2d 1359, 1366, n.12 (7th Cir. 1985) (Section 1985(3) does not cover alleged victims of nonracial political conspiracies). It may be reasonably inferred, however, that defendants' conspiracy against plaintiffs arose from plaintiffs' complaints concerning defendants' refusal to hire African American men in full-time positions and decision to hire less qualified white Genova supporters to such positions. Thus, the court will allow plaintiffs to proceed with their conspiracy claims.

## C. Liability of individual defendants under § 1983

Plaintiffs sue the individual defendants in both their official and individual capacities pursuant to § 1983 under Counts I, II and VII. With respect to plaintiffs' claims against the individual defendants in their official capacities, a suit against a public official in his "official capacity" is a suit against the entity of which that official is an agent. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Thus, to the extent that plaintiffs sue each of the individual defendants in his official capacity, as well as Calumet City, the court will dismiss the official capacity claims under Counts I, II and VII against the individual defendants and Genova as redundant.

With respect to plaintiffs' claims against the individual defendants in their individual capacities, the Seventh Circuit in *McPhaul v. Bd. of Comm. of Madison Co.* states:

10

> To establish an individual capacity claim under section 1983 against a supervisory official, there must be a showing that the official was directly responsible for the improper conduct . . . and knowingly, willfully, or at least recklessly caused the alleged deprivation by [her] failure to act . . . .
>
> However, a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or conduct. . . .
>
> The plaintiff must also show that the supervisor acted (or failed to act) because of the plaintiff's race.

226 F.3d 558, 566 (7th Cir. 2000) (internal citations and quotations omitted).

Here, plaintiffs allege sufficient facts to hold the individual defendants liable subject to their individual capacities under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment pursuant to § 1983. Plaintiffs allege that the individual defendants managed the Public Works Department. Plaintiffs also allege that both Garrison and Qualkinbush repeatedly denied plaintiffs' requests to receive more training so that they would be promoted to full-time positions and that these defendants refused their requests. Moreover, plaintiffs allege that they complained to these defendants about race discrimination. It also may be inferred, however, that the individual defendants did not respond to plaintiffs' complaints but rather gave preferential treatment to less qualified white employees based on race and a political patronage system. Furthermore, plaintiffs allege that Qualkinbush, at the direction of Genova and Wilhelm, instructed plaintiffs to discontinue their union activities or face termination. Moreover, plaintiffs allege that defendants met on February 4, 2001 to terminate Golston's light duty status due to his union activities and that Golston was subject to harsher discipline than his white male counterparts. Finally, plaintiffs allege that the individual defendants terminated them

11

based on their race, union activities and opposition to Genova. As such, plaintiffs sufficiently allege facts that demonstrate § 1983 claims against the individual defendants in their individual capacities.

**D.   Plaintiffs' claims for race discrimination, harassment and retaliation**

Plaintiffs sue all defendants for race discrimination and harassment pursuant to Title VII and in violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to § 1983 under Count VII and for race discrimination pursuant to § 1981[4] under Count VIII. Furthermore, plaintiffs sue Calumet City, Genova and Wilhelm "officially" for retaliation pursuant to Title VII under Count IX.

As a threshold matter, plaintiffs concede that the individual defendants, and Genova for that matter, are not employers and thus are not liable under Title VII. *See* 42 U.S.C. § 2000e(b); *Williams v. Banning*, 72 F.3d 552, 554 (7th Cir. 1995), (applying *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279 (7th Cir. 1995), to hold that individuals who do not meet Title VII's definition of employer cannot be held liable under Title VII). Thus, the court will dismiss plaintiffs' Title VII claims against the individual defendants and Genova.

Defendants assert that plaintiffs fail to plead their *prima facie* case for race discrimination, harassment and retaliation. Because a plaintiff's *prima facie* case concerns an

---

[4]Section 1981(a) states:

> All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

In addition, section 1981(b) provides that the meaning of the phrase "to make and enforce contracts" in § 1981(a) includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."

evidentiary standard, a plaintiff need not plead a *prima facie* case to satisfy the liberal notice pleading requirements under Rule 8. *See Swierkiewicz* v. *Sorema*, 534 U.S. 506, 510, 515 (2002) (holding that the Federal Rules of Civil Procedure do not require a heightened pleading standard for employment discrimination cases). Instead, for the same reasons plaintiffs plead facts that show Calumet City is subject to municipal liability and the individual defendants are subject to individual capacity claims, plaintiffs plead facts that show defendants discriminated and harassed them on account of their race under Counts VII and VIII and that Calumet City retaliated against them under Count IX.

E.  **Supplemental jurisdiction**

Because several of plaintiffs' federal claims remain against defendants, the court exercises supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

**ORDER**

Wherefore, for the reasons set forth above, the court denies in part and grants in part Calumet City's and the individual defendants' motion to dismiss [#19]. The court dismisses Count VI for lack of subject matter jurisdiction. The court dismisses plaintiffs' claims against Garrison, Genova, Qualkinbush and Wilhelm in their official capacities under Counts I, II and VII although these defendants will remain liable under said Counts subject to plaintiff's claims against them in their individual capacities. The court dismisses plaintiffs' Title VII claims against Garrison, Genova, Qualkinbush and Wilhelm under Count VII although these defendants will remain liable subject to the Equal Protection Clause of the Fourteenth Amendment pursuant to § 1983. The court dismisses plaintiffs' Title VII claims against Genova and Wilhelm under

Count IX. Defendants are directed to answer plaintiffs' first amended complaint by April 9, 2003. A scheduling conference is set for April 24, 2003 at 9:30 a.m. In the meantime, the parties are directed to make Rule 26(a)(1), Fed. R. Civ. P., disclosures.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 19, 2003